# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| MICHAEL DOKTOREZTK, | CASE NO. 09cv1288 JM(WVG) |
|---|---|
| Plaintiff, | ORDER SUSTAINING OBJECTIONS TO REPORT AND RECOMMENDATION RE: DENIAL OF MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| S. MORALES, | |
| Defendant. | |

Defendant has filed Objections to the Report and Recommendation entered by Magistrate Judge Gallo recommending the denial of Defendant's motion for summary judgment ("R & R"). Plaintiff did not file a response to the Objections. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the Objections are sustained, the court declines to adopt the R & R, and grants Defendant's motion for summary judgment.[1]

Defendant objects to the admissibility and sufficiency of the evidence relied upon in the R & R to deny Defendant's motion for summary judgment. The R & R concluded that the risk of harm to Plaintiff was obvious, under the standard articulated in Farmer v. Brennan, 511 U.S. 825 (1994), because of the informal standing rule "that a general population inmate who encounters a[] SNY (Sensitive Needs Yard) inmate must attack that inmate on sight." (R & R at p.14:13-15; p. 17 n.5).

---

[1] The court incorporates the R & R as if fully set forth herein.

1  The R & R considered the declaration of Michael Douglas Taylor in concluding that genuine issues
2  of material fact preclude granting Defendant's motion for summary judgment.

3  **The R & R**

4  The critical issue raised by the parties is whether Defendant Morales acted with the requisite
5  mental state. As set forth in the R & R, deliberate indifference may be established by showing that
6  the official "knows of and disregards an excessive risk to inmate health or safety," Farmer, 511 U.S.
7  at 837, or that the official was "exposed to information concerning the risk and thus 'must have
8  known' about it." Id at 842-43 (citations omitted). The R & R concluded, based upon the Taylor
9  declaration, that there was a genuine issue of material fact with respect to whether the informal
10 standing rule, or "convict code," placed Defendant on notice that there was an obvious risk of harm
11 to Plaintiff.

12 The only evidence supporting the existence of such an informal code is the Taylor declaration.
13 The R & R did not reach, through apparent oversight, the evidentiary objections raised by Defendant,
14 (Ct. Dkt. 39), and erroneously concluded that "Defendant does not dispute that this informal standing
15 rule exists." (R & R at p.14 n.4). The evidentiary objections raised by Defendant directly challenge
16 the admissibility of the Taylor Declaration. See Fed.R.Civ.P. 56(c)(4). This order addresses the
17 evidentiary objections.

18 **The Taylor Declaration**

19 Defendant argues that much of the Taylor declaration is irrelevant, lacks foundation, and
20 constitutes impermissible hearsay. (Ct. Dkt. 39, 52). The following pertinent portions of the Taylor
21 declaration were relied upon in the R & R to deny the motion for summary judgment. Taylor asserts
22 that (1) prison staff uniformly knew of the standing order of assaulting SNY inmates on sight because
23 they received "Daily Post Orders from Warden Hernandez that they were to absolutely clear or
24 lockdown Central Plaza when they move an SNY Inmate," (Taylor Decl. ¶5(r)); (2) there is a
25 "convict-code" which consists of a "standing order" requiring all general population inmates to assault
26 SNY inmates on sight or they themselves will be assaulted by other general population inmates,
27 (Taylor Decl. ¶5(o)); (3) Sergeant Pittman stated at some unidentified time that SNY inmates are not
28 to be moved until the area is cleared, "no exceptions," (id. ¶5(l)); and (4) the TTA Medical Facilities

1  (the location where the assault occurred) is a "nightmare and just rife with physical assaults between
2  general population inmates and SNY inmates." (id. ¶5(h)).  Each evidentiary objection is discussed
3  in turn.

### Daily Post Orders and Knowledge by Prison Officials of the "Convict Code"

The critical threshold issue is whether Taylor is a competent witness to testify about what prison staff members uniformly knew of the purported standing order that general population inmates must assault SNY inmates. A prison official does not deny an inmate of humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The requisite knowledge element may also be established by showing that the official was "exposed to information concerning the risk and thus 'must have known' about it." Id. 842-843 (citations omitted). In Farmer, the inmate was a male transsexual who "wore women's clothing . . . underwent estrogen therapy, received silicone breast implants and submitted to unsuccessful black-market testicle-removal surgery . . . continued hormonal treatment while incarcerated by using drugs smuggled into the prison, and apparently wears clothing in a feminine manner, as by displaying a shirt off one shoulder." Id. at 829-30. The district court concluded that respondents were not deliberately indifferent to plaintiff's safety because plaintiff "never expressed any concern for his safety to any of" defendants. Id. at 830. The Supreme Court reversed and remanded, noting that the district court "may have mistakenly thought that advance notification was a necessary element of an Eighth Amendment failure-to-protect claim." Id. at 849.

A "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FRE 602; Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1028 (9th Cir. 2001) ("It is not enough for a witness to tell all she knows; she must know all she tells."). Here, Taylor testifies, in conclusory fashion, that "Daily Post Orders from Warden Hernandez [required prison officials] to absolutely clear or look-down Central Plaza when they move an SNY inmate." (Taylor Decl. ¶5(r)). There is no showing that Mr. Taylor, a SNY inmate, has access to internal prison administrative documents such that he would be in a position to possess knowledge about internal administrative matters of the California Department

1  of Corrections and Rehabilitation ("CDCR").  Moreover, Plaintiff does not submit any Daily Post
2  Orders, identify the basis for Taylor's knowledge that all prison employees knew that general
3  population inmates must assault all SNY inmates on sight, nor identify any regulation, formal policy
4  or procedure, or informal policy or procedure, requiring SNY inmates to be completely segregated
5  from the general population at all times.  Further, Plaintiff himself does not declare any knowledge
6  of the so-called convict code.  The court notes that the present situation is markedly different from the
7  factual situation in Farmer where the obviousness of plaintiff's identity as a transsexual was available
8  for all to observe.

9        In the absence of admissible evidence that prison officials were aware of the convict code and
10 the risk of harm to Plaintiff, the court concludes that there is no genuine issue of material fact with
11 respect to deliberate indifference.  The following undisputed evidence demonstrates that Defendant
12 Morales subjectively did not know of an excessive risk of harm to Plaintiff, (Morales Decl. ¶¶15-16);
13 R & R at pp.11:16 - 12:3), nor was he aware of an "obvious" risk such that he should have known of
14 a serious risk of harm to Plaintiff.  Plaintiff never informed prison officials of any safety concerns and,
15 on the date of the incident, five other SNY inmates walked in front of the GP inmates who assaulted
16 Plaintiff without being assaulted.  The court notes that there is no written policy or regulation in the
17 California Code of Regulations, title 15; the CDCR Operations Manual, or in the R.J. Donovan
18 Operational Procedures manual requiring the separation of SNY inmates from general population
19 inmates.  (Borg Decl. ¶¶ 3-5).  Furthermore, Robert Borg, an individual who worked for the CDCR
20 for 32 years and retired as a Warden, declares that not only is there no official or unofficial policy to
21 maintain complete separation of general and SNY inmates, and that Post Orders are generally issued
22 for specific assigned positions in the prison, such as yard or culinary duties.  "Post Orders do not
23 generally provide general guidance on topics such as the handling of SNY inmates, particularly where
24 there is an applicable Operational Procedure on that topic.  I am not aware of any Post Orders which
25 stated that SNY inmates are to be kept separate from GP inmates."  (Borg Decl. ¶5).

26       In sum, the Taylor declaration fails to establish that he had personal knowledge, or was
27 otherwise in a position to know, that all prison staff members uniformly knew that general population
28 inmates assault SNY inmates on sight and must therefore be completely separated.  Without such

evidence, Plaintiff fails to create a genuine issue of material fact with respect to the obviousness of the risk of harm to Plaintiff. On this record, Defendant is entitled to summary judgment.

### The Convict Code

Mr. Taylor declares that there is a convict code requiring general population inmates to assault SNY inmates on sight and that any general population inmate who fails to assault a SNY inmate will himself be assaulted. (Taylor Decl. ¶5(o)). The Taylor declaration establishes that he had been housed in the Donovan SNY yard for about six months before the incident and, prior to that time, he was housed at a SNY yard in Lancaster. (Taylor Decl. ¶5(a)). Taylor does not declare whether he has ever been housed in general population. While Taylor had experienced Donovan's SNY for six months, there is no showing that he had any contact with the general inmate population to be in a position to know what all general population inmates know, or do not know. While Mr. Taylor is certainly in a position to observe what occurs in SNY generally, it is less clear the extent of Mr. Taylor's personal knowledge of the general inmate population.

In sum, Mr. Taylor's declaration establishes that he has personal knowledge of general events occurring in SNY and the perceptions by SNY inmates that they are subject to assault by the general population. Taylor fails to establish that he has ever been housed in the general population or that he was in a position to have personal knowledge of the general population's perception of the convict code. This evidence does not support the proposition that prison officials uniformly knew of the so-called "convict code."

### Sgt. Pittman's Statement

Mr. Taylor declares that Sgt. Pittman was heard saying, "There's no exception, don't move them (e.g. SNY-inmates) until you clear the area, and that means all of them!!' and 'You open that door without clearing the bench, you might as well quit (e.g. CDC employment)." (Taylor Decl. ¶5(l)). This statement is not admissible for several reasons. First, Mr. Taylor does not declare that he heard anything. Rather, he declares that Sgt. Pittman "was heard" to say. This statement does not comply with FRE 602. Further, the statement appears offered for the truth of the matter and is therefore inadmissible hearsay. FRE 802.

### The TTA Medical Facility

Mr. Taylor declares that the TTA Medical Facility is "just rife with physical assaults between general population inmates and SNY-inmates." (Taylor Decl. ¶H). Accepting this evidence at face value, Plaintiff fails to show how this evidence supports his theory that everyone in the prison, inmates and prison employees alike, knew that general population inmates must attack SNY inmates on sight or they themselves will be assaulted.

Upon consideration of the evidentiary objections raised by Defendant, the court concludes that Defendant is entitled to summary judgment because Plaintiff fails to come forward with sufficient <u>admissible</u> evidence under Fed.R.Civ.P. 56(c)(4) to create a genuine issues of material fact that there was an obvious risk of harm to Plaintiff in the form of a standing order that general population inmates must assault all SNY inmates on sight.

In sum, the court sustains the Objections, declines to adopt the R & R, and grants summary judgment in favor of Defendant Morales and against Plaintiff Doktoreztk. As the court concludes that no constitutional violation occurred, it need not address qualified immunity. See <u>Tibbetts v. Kulongoski</u>, 567 F.3d 529 (9th Cir.2009). The Clerk of Court is instructed to close the file.

**IT IS SO ORDERED.**

DATED: March 30, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:        All parties